**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **BRANDON D. B.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 19 C 5896** |
| **v.** ) | |
| ) | **Magistrate Judge Beth W. Jantz** |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner of Social Security,**[2] ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Brandon D. B.'s application for child's insurance benefits and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 22, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 38, Def.'s Mot.] is granted.

---

[1]  In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2]  Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

# BACKGROUND

## I.     Procedural History

On June 29, 2016, Plaintiff filed a claim for child's insurance benefits[3] and SSI, alleging

disability since November 28, 2008, due to a learning disability and cognitive delay. [Dkt. 16-1,

R. 250-58.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 78-79,

103-04.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was

held on May 4, 2018. [R. 33-77.] Plaintiff personally appeared and testified at the hearing and

was represented by counsel. [R. 35, 37-59.] Plaintiff's mother Ava B.[4] and vocational expert

("VE") Jacqueline Bethell also testified. [R. 60-76.] On September 20, 2018, the ALJ denied

Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. [R. 13-25.]

The Social Security Administration Appeals Council denied Plaintiff's request for review,

leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-3.]

## II.    The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security

Administration's five-step sequential evaluation process. [R. 13-25.] The ALJ found at step one

that Plaintiff had not attained the age of 22 by, nor had he engaged in substantial gainful activity

since, his alleged onset date of November 28, 2008. [R. 15.] At step two, the ALJ concluded

that Plaintiff had the following severe impairments: learning disorder, neurocognitive delay,

anxiety disorder, and depressive disorder. [R. 16.] The ALJ concluded at step three that his

impairments, alone or in combination, do not meet or medically equal one of the Social Security

---

[3]  These benefits are available if the claimant is 18 years old or older and has a disability that
began before attaining the age of 22.  20 C.F.R. § 404.350(a)(5).

[4]  The Court also refers to Plaintiff's mother by her first name and first initial of her last name.

Administration's listings of impairments (a "Listing"). [R. 16-19.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: (1) he can perform simple, routine, repetitive tasks in a low-stress environment (defined as having few, if any, work-related decisions and few, if any, changes in the work setting, as well as no interactions with the public and superficial interactions with co-workers), (2) he can perform work involving simple sequential steps that can be learned by short, simple instructions or a short demonstration and no tandem or team tasks, and (3) he requires a break every 2 hours for 15 minutes, which can be accommodated by routine breaks and lunch. [R. 19-24.] At step four, the ALJ concluded that Plaintiff had no past relevant work. [R. 24.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. [R. 24-25.]

## DISCUSSION

### I.    Judicial Review

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed

impairment; (4) the claimant retains the RFC to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant

meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837.

Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's

analysis "must provide some glimpse into the reasoning behind[his] decision to deny benefits."

*Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673

(7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail

and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th

Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to

whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately

explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II. Analysis

Plaintiff argues that the ALJ (1) erred at step 3 by not finding that Listing 12.05

(concerning intellectual disorders) was equaled or met, (2) erred in evaluating Plaintiff's

subjective symptom statements, (3) improperly cherry-picked evidence from the consultative

examinations in determining Plaintiff's RFC, and (4) failed to support the finding at step 5 that

Plaintiff could work. [Dkt. 23, Pl.'s Mem. at 7-15; dkt. 42, Pl.'s Reply at 1-5.] The

Commissioner argues in opposition that the ALJ properly supported her conclusions at each step

of her analysis with substantial evidence. [Dkt. 39, Def.'s Mem. at 7-19.] For the reasons that

follow, the Court affirms the ALJ's decision.

### A. Listing 12.05

Plaintiff argues that the ALJ erred at step 3 by improperly determining that Listing 12.05

was neither equaled nor met. [Pl.'s Br. at 8-11.] As relevant here, Listing 12.05B requires a full-

scale IQ score of 71-75 as well as a verbal or performance IQ score of 70 or below ***and***

"significant deficits in adaptive functioning currently manifested by extreme limitation of one, or

marked limitation of two," of the 4 listed areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. As the ALJ explained, "[a] marked limitation means functioning in this area independently, appropriately, effectively and on a sustained basis is seriously limited." [R. 17.] Because the ALJ found that Plaintiff met the IQ-score prong, only the adaptive-functioning prong is at issue. [R. 19.] Plaintiff contends that the ALJ erroneously concluded that Plaintiff "ha[d] no more than moderate limitations in his adaptive functioning," rather than marked limitations, by committing numerous errors in evaluating each of the 4 areas of mental functioning. [Pl.'s Mem. at 8-11.] The Court evaluates the ALJ's decision under the highly deferential substantial-evidence standard, and concludes that Plaintiff's contentions are unavailing because they amount to a mere disagreement with the ALJ's weighing of the record evidence. *See Beardsley*, 758 F.3d at 836-37.

First, as to understanding, remembering, and applying information, Plaintiff takes issue with the ALJ's finding of a moderate limitation, but acknowledges that the ALJ evaluated evidence on which Plaintiff now relies: Plaintiff had cognitive delays as shown by his school records, needed instructions repeated, and had some memory deficits during treatment. [Pl.'s Br. at 9-10; *see* R. 17 (citing 532-600 (school records), 368-69, 373, 382, 386-87, 401, 406, 413-14, 422-32 (treatment notes)).] The ALJ concluded, however, that this evidence did not warrant greater than a moderate limitation when considered alongside reports of Plaintiff's memory being "generally intact" throughout his treatment and his 2012 diagnosis of borderline

intellectual functioning.[5]  [R. 17 (citing R. 468 (treatment note), 631 (2012 consultative examination)).]  Although Plaintiff would have preferred that the ALJ emphasized the earlier testing and reports from school and the treatment reports that his memory was impaired, the ALJ instead looked at all the evidence and placed more weight on the treatment reports of intact memory and Plaintiff's more recent diagnosis of borderline intellectual functioning, [R. 631, 635], as opposed to a more severe condition, like an intellectual disability.  Based on this record and the deferential standard, the Court cannot conclude that the ALJ committed error in finding that any intellectual and memory deficits caused no more than a moderate limitation on Plaintiff's ability to understand, remember, and apply information.  *See Beardsley*, 758 F.3d at 836-37 (the Court reviews the record as a whole to determine whether substantial evidence exists, but cannot substitute its judgment for the ALJ's by reweighing the evidence).

Second, Plaintiff cites his own subjective reports in asserting that the ALJ should have found that he had a marked limitation in interacting with others.  [Pl.'s Br. at 10.]  But the ALJ indeed considered evidence that Plaintiff had social difficulties:  records reflected that Plaintiff had difficulty being around groups and others because he is not social, isolates himself, engages in solitary activities, and doesn't go out by himself.  [R. 17 (citing R. 342-43 (October 2016 consultative examination), 366 (November 2016 progress note), 469 (November 2016 progress note)).]  The ALJ also considered, however, contrary evidence that Plaintiff could socialize on a limited basis:  Plaintiff lived with his brother for a time, babysat his brother's kids occasionally

---

[5]  Borderline intellectual functioning is a "[d]isability marked by deficits in adaptive, intellectual, or social and interpersonal functioning that do not meet accepted criteria for intellectual disability or mental retardation."  *Borderline Intellectual Functioning*, TABER'S MEDICAL DICTIONARY, *available at* https://www.tabers.com/tabersonline/view/Tabers-Dictionary/773834/0/borderline_intellectual_functioning?q=borderline+functioning+intellectual (last visited July 8, 2022).

during that time, attended therapy, talked to his cousins, and had friends in school. [R. 17; *see* R. 43 (Plaintiff's testimony), 374 (February 2018 treatment note), 633 (school record).] Ultimately, after reviewing the record, the ALJ determined that only a moderate limitation in interacting with others was appropriate, and the Court finds no reason to disturb that conclusion given the deferential standard of review. [R. 17.]

Third, as to concentrating, persisting, or maintaining pace, the ALJ first acknowledged that Plaintiff's mother reported Plaintiff paces back and forth and voices concerns for his safety. [R. 17.] The ALJ then noted that the treatment notes in the record reflected that Plaintiff had "occasional disorganized, distracted, and preoccupied concentration" but that, during examinations and despite those limitations, his "attention, concentration, and intellectual functioning were generally fair and average, his thought processes were logical and coherent, and his insight was fair." [R. 17 (citing R. 368-69, 373, 382, 386-87, 401, 406, 413-14, 422-32 (2017 & 2018 mental status examinations and group therapy notes)).] Plaintiff cites other evidence, such as his Global Assessment Functioning ("GAF") score of 50[6] and his subjective reports of hearing his mom and grandmother calling to him when they were not, talking to himself, and needing to have a job coach accompany him to a previous job to remind him to complete tasks, that, he says, begs the question of how he "would be capable of sustaining attention and concentration—or remaining on task—for an acceptable percentage of the workday." [Pl.'s Br. at 10-11.]

---

[6] The GAF scale is a clinician's assessment of a person's overall level of functioning. A GAF score of 21-30 indicates inability to function in almost all areas; 31-40 indicates major impairment in several areas; 41-50 indicates serious symptoms; 51-60 indicates moderate symptoms; and 61-70 indicates mild symptoms. AMERICAN PSYCHIATRIC ASSOCIATION, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Rev. 2000).

The evidence on which Plaintiff relies, while arguably relevant to determining any limitation on concentration, persistence, or pace, is not dispositive, however. Courts have reasoned that the GAF score, for example, is of little probative value because it represents "a snapshot of a particular moment" rather than a long-term view of Plaintiff's functioning; the ALJ indeed recognized this later in her discussion of the medical evidence. *See* R. 22-23; *Sambrooks v. Colvin*, 566 F. App'x 506, 511 (7th Cir. 2014); *see also Veronica H. v. Saul*, 2019 WL 3935039, at *2 (N.D. Ill. Aug. 20, 2019). Further, the ALJ need not discuss each piece of evidence as long as she accurately and logically ties the evidence to her ultimate conclusion. Here, she found most probative the reports of Plaintiff's physicians that even when he was having difficulty concentrating during sessions, he still had fair ability to pay attention and concentrate, [R. 17 (citing R. 368-69, 373, 382, 386-87, 401, 406, 413-14, 422-32)]. Thus, the Court does not find the conclusion that Plaintiff has only a moderate limitation in concentration, persistence, or pace unsupported, even if it would be possible to weigh the evidence differently in the first instance.

Fourth, the ALJ concluded that Plaintiff also had a moderate limitation in adapting or managing himself. [R. 17.] Plaintiff asserts that this conclusion has no support, relying on Plaintiff's need for reminders to shower or brush his teeth, reports that he had body odor, and inability to leave his room or his house. [Pl.'s Br. at 11.] The ALJ recognized that Plaintiff was sometimes malodorous or unkempt during his treatment. [R. 17; *see, e.g.,* R. 362.] But, the ALJ further outlined that Plaintiff's subjective reports of his abilities in this area were mixed: Plaintiff himself asserted in a 2016 function report that he did not have issues with personal care, and he testified that he could do chores including taking out the trash and laundry, but he also reported having a difficult time adapting to change and being dependent on other people for

support. [R. 17; *see* R. 44-45 (hearing testimony), 264-65 (function report).] Because the ALJ adequately explained how she weighed the evidence, this conclusion is supported by substantial evidence, too.

In sum, Plaintiff disagrees with how the ALJ considered the evidence, but the ALJ gave a sufficient explanation to build the requisite "logical bridge between the evidence and the result" when making her step 3 findings. *Beardsley*, 758 F.3d at 837; *see Shaun R. v. Saul*, No. 18 C 4036, 2019 WL 6834664, at *5 (N.D. Ill. Dec. 16, 2019) ("So, as she is required to do, the ALJ acknowledged evidence on both sides of the issue and reached a conclusion. As long as she didn't ignore evidence that points to a disability, she has fulfilled her duty to minimally articulate the path to her conclusion."); *Jones v. Berryhill*, 16 C 9113, 2018 WL 2320923, at *4 (N.D. Ill. May 22, 2018) (rejecting plaintiff's step 3 challenge where she pointed to no evidence demonstrating marked limitations from physicians and instead identified that evidence herself, which amounted to an improper attempt to have the Court to reweigh the evidence). Thus, the ALJ's step 3 findings are supported by substantial evidence, and this Court will not reweigh the evidence on appeal.

**B. Plaintiff's RFC**

While acknowledging that there are no opinions from treating or examining sources in the record, Plaintiff maintains that the ALJ "bent the medical evidence to support her ultimate conclusions" by inconsistently weighing the consultative examinations in the record. [Pl.'s Br. at 13-14.] "Weighing conflicting evidence from medical experts, however, is exactly what the ALJ is required to do." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); *see also Jones*, 2018 WL 2320923, at *4 (rejecting plaintiff's challenge to weighing of consultative examinations for mental condition).

10

Here, the ALJ appropriately evaluated the three consultative examinations in the record as well as the two non-examining state agency physicians' opinions. First, in September 2012 at a consultative examination, Dr. Jeffrey Karr performed IQ testing and diagnosed Plaintiff with borderline intellectual functioning, noting that during the examination Plaintiff was "polite, reserved, rather non-verbal, exhibiting limited eye contact and succinct, intelligible speech, and able to persist," he "appeared to try hard," and he "did not require an unusual number of repeated instructions." [R. 21 (citing R. 629-31).] The ALJ gave "significant weight" to these findings because they were consistent with the record and based on an examination of Plaintiff. [R. 21.]

Next, Dr. Mark Langgut evaluated Plaintiff in September 2015, observing in part that Plaintiff had adequate social skills, his eye contact was good, he was alert and oriented, his speech was clear, direct, and relevant but also terse, he was adequately groomed and dressed, his memory skills were variable but with intact short- and long-term memory skills, he had "mildly obsessive ideas and moderate ruminative ideations," and he displayed impaired insight. [R. 21 (citing R. 632-35).] Overall, Dr. Langgut diagnosed Plaintiff with untreated grief disorder, learning disorder by history, and borderline intellectual functioning. [R. 21 (citing R. 635).] The ALJ gave these findings "significant weight" because they were based on an examination of Plaintiff. [R. 21.]

Most recently, in October 2016, Dr. Karr conducted a consultative examination in which Plaintiff reported increased depressive symptoms because of the loss of his father. [R. 21 (citing R. 342-44.).] A mental status examination revealed that Plaintiff was kempt in appearance, had a dysphoric mood and a constricted affect, presented withdrawn and seemed uncomfortable interacting, and required frequent repeated instructions. [R. 21 (citing R. 342-44).] The ALJ only assigned "some weight" to this arguably more dire assessment, recognizing that it too was

based on an examination of Plaintiff, but discounting it somewhat because it was from a one-time evaluation and the record as a whole supports that Plaintiff's symptoms are improved with medication. [R. 21.]

Plaintiff's primary issue with the ALJ's weighing of the consultative examinations is that the ALJ listed the 2012 and 2015 exams as a positive point, but then seemingly listed an assessment based off a one-time examination as a negative for the 2016 exam. [Pl.'s Br. at 13.] But the ALJ's point makes sense in the context of her review of the medical records, which showed improvement in his depressive symptoms, pacing, and tolerance for crowds once Plaintiff began therapy and began taking medication later in 2016. [R. 21.] Thus, she properly discounted the 2016 examination because the results were not necessarily reflective of Plaintiff's current condition after that point.

The ALJ went on to give the state agency physicians' opinions—that Plaintiff had mild to moderate limitations in each of the 4 areas of mental functioning discussed above—"little weight" because the record evidence showed that Plaintiff had greater limitations than they had opined. [R. 21.] Additionally, the ALJ gave Plaintiff's GAF score of 50 some weight. [R. 21.]

As in *Young*, this is not a case where there was a treating physician's opinion or where an examining physician's opinion was rejected in favor of a non-examining physician. 362 F.3d at 1001-02 (weighing conflicting medical opinions is the ALJ's role). The ALJ was entitled to evaluate each of the consultative examinations and decide the weight to give to the state agency physicians' opinions before crafting an RFC that would account for those limitations. Moreover, although Plaintiff asserts that all of the consultative examinations alone reflect symptoms of a person who would be unable to work, Plaintiff does not explain what further limitations should

have been imposed in the RFC.[7]  [Pl.'s Br. at 13-14.]  Thus, the Court determines that no reason exists to disturb the ALJ's RFC finding.

### C. Plaintiff's Subjective Symptom Statements

When evaluating a plaintiff's report of his symptoms, in addition to the medical evidence, the ALJ may also consider a plaintiff's daily activities, intensity of pain and other symptoms, precipitating and aggravating factors, medications and their side effects, treatment received, and any other measures used to relieve symptoms.  20 C.F.R. § 404.1529(c)(1-3).  The Court will overturn the ALJ's evaluation of Plaintiff's subjective statements about his symptoms only if it was "patently wrong."  *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017).  The ALJ must support her analysis with "specific reasons supported by the record."  *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *see Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (explaining that patently wrong "means that the decision lacks any explanation or support").  Indeed, "an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence."  *Pepper*, 712 F.3d at 362 (internal quotation omitted).

Plaintiff argues that the ALJ's evaluation of Plaintiff's subjective statements about his symptoms was flawed.  [Pl.'s Br. at 11-13.]  As an initial matter, Plaintiff asserts that the ALJ referring to Plaintiff's "persuasiveness" at the outset indicated an unwillingness to fairly consider the subjective evidence.  [Pl.'s Br. at 11-12.]  But whatever the term that the ALJ initially used,

---

[7]  Additionally, Plaintiff argues in a footnote that the ALJ should have allowed for more recent IQ testing, stating without elaboration that it "could have been quite pivotal in determining the outcome of the case."  [Pl.'s Br. 13 n.2.]  As Plaintiff has not developed this argument, it is waived.  *See Truelove v. Berryhill*, 753 F. App'x 393, 397-98 (7th Cir. 2018) (finding argument waived where it appeared in a single-sentence footnote without record support).  In any event, it is unclear to the Court, and indeed unexplained further by the Plaintiff, how a presumably lower IQ score would have aided Plaintiff where the Court had already recognized that Plaintiff's IQ score was sufficient to satisfy the first criteria of Listing 12.05.  [R. 19.]

she in any case went on to properly consider the extent to which Plaintiff's reports were consistent with the record, which was exactly what the regulation required her to do. *See* SSR 16-3p; 20 C.F.R. § 404.1529(c).

The ALJ gave four succinct reasons for concluding that Plaintiff's statements about his symptoms were not entirely consistent with the medical evidence and other record evidence: (1) his reported daily activities are not as limited as one would expect given his complaints of disabling symptoms and limitations; (2) he has received only routine treatment, including medication and minimal therapy sessions; (3) no treating or examining doctor gave a non-conclusory opinion that Plaintiff is disabled; and (4) the medical evidence contains little to no recent treatment records that show the current state of his conditions or support his allegations. [R. 23.] Plaintiff challenges the first 3 reasons. [Pl.'s Br. at 12-13.]

As to daily activities, the ALJ did not identify what specific activities she considered in the paragraph concerning her evaluation of Plaintiff's symptoms, but at step 3, she referenced that although Plaintiff reported isolating himself and engaging in solitary activities, the record also reflected that he is able to attend therapy and talk to his cousins, that he used to babysit his brother's children, and that he does some chores like taking out the garbage and laundry. [R. 17, 23.] The ALJ determined that despite Plaintiff's reports, these activities warranted findings of no more than moderate limitations in his mental functioning. [R. 17.] This previous analysis of why Plaintiff's daily activities warranted only moderate limitations in his functioning applies with equal force to the ALJ's decision that Plaintiff's subjective reports were not entirely consistent with the record. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("An ALJ need not rehash every detail each time [she] states conclusions on various subjects."). Further, the analysis made clear that the ALJ was not equating Plaintiff's ability to do some chores or

socialize with an ability to perform full-time work; rather, she was appropriately identifying his daily activities as one reason she did not determine that his reported symptoms were as severe as he alleged. *See Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022); *Regina P. v. Saul*, No. 19 C 3155, 2020 WL 4349888, at \*5 (N.D. Ill. Jul. 29, 2020) ("The ALJ was permitted to consider [the] mismatch between [plaintiff's] daily activities and [his] symptom description.").

Next, the ALJ properly considered that Plaintiff's treatment had been routine and included only medication and minimal therapy sessions. [R. 23.] Again, the ALJ elaborated on this factor earlier in her decision, explaining that Plaintiff began therapy only after his father's death, which continued through the present and during which he reported improved symptoms once he started taking medication. [R. 20-21.] The ALJ was entitled to consider this treatment as routine. *See Shaun R.*, 2019 WL 6834664, at \*8 (characterizing "therapy and medication" as "fairly routine" and noting that under the regulations the ALJ is permitted to consider course of treatment). Rather than representing a misunderstanding of mental illness, as Plaintiff asserts, the ALJ's analysis reflects that she considered the conservative course of treatment as one factor in evaluating Plaintiff's subjective symptoms. [Pl.'s Br. at 12.]

Last, Plaintiff says that the ALJ's reliance on the lack of a non-conclusory opinion from a treating or examining source "makes no sense," but this too is unavailing. [Pl.'s Br. at 13.] Throughout Plaintiff's treatment and during consultative examinations, he reported his subjective symptoms to his physicians. But no treating or examining doctor ever evaluated those subjective complaints or opined as to Plaintiff's mental abilities; they merely reported Plaintiff's statements and their objective findings. In such a void, the ALJ was entitled to consider that Plaintiff's subjective symptoms lacked opinion support in the record. 20 C.F.R. § 404.1529(c)(3). Indeed, the ALJ's fourth reason made that explicit; the lack of treatment records overall supporting the

15

severity of his subjective symptoms was properly considered, too. 20 C.F.R. § 404.1529(c)(1) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

Although the ALJ could have explained further, she gave sufficient reasons with support in the record that Plaintiff's subjective symptom statements were not entirely consistent with the record. *See Murphy*, 759 F.3d at 816. Under these circumstances, giving the ALJ the appropriate "special deference," the Court cannot determine that the ALJ's decision in this respect was "patently wrong." *Summers*, 864 F.3d at 528.

### D. VE's Testimony

Finally, Plaintiff argues that the ALJ erred in relying on the VE's testimony, which Plaintiff asserts was contradictory because the VE testified there would be work available for someone with Plaintiff's RFC (*i.e.*, limited to a low-stress workplace with few, if any, work-related decisions and "few, if any, changes in the work setting") but then testified that work would not be available if the person could not adapt to routine changes in the workplace, or only occasionally adapt to routine changes. [Pl.'s Br. at 14; R. 73.] But there is no obvious contradiction between those two. To be able to "occasionally adapt to routine changes" means to only sometimes be able to handle changes; the "occasionally" modifies the ability to adapt. [*See* R. 75.] But when the ALJ asked the VE about an environment with few changes itself, the hypothetical assumed Plaintiff's ability to adapt to *all* of those *few* changes. [*See* R. 73.] In determining that Plaintiff could handle a workplace with few changes, the ALJ necessarily found that Plaintiff would be able to always (not just occasionally) adapt to few changes; it was the (lack of) frequency of change that was key to the VE's answer. Thus, the ALJ's acceptance of

16

the VE's testimony that, given the RFC, Plaintiff would accordingly be able to work as a cleaner II, a laboratory equipment cleaner, and a lamination assembler is not error. [R. 24-25, 73-74.]

Plaintiff also contends that because, as he argued at step 3, he has marked limitations in his adaptive functioning, the VE's testimony establishes that he is disabled. [Pl.'s Br. at 14-15.] But, for the reasons already discussed above, *supra* section I.A, the ALJ found no more than moderate limitations and thus did not adopt an RFC that was more restrictive or ask the VE to adopt any of the limitations posed by Plaintiff's attorney at the hearing. [*See* R. 75-76.] *Murphy*, 759 F.3d at 820 ("The ALJ is only required to incorporate into her hypotheticals those impairments and limitations that she accepts as credible.").

Overall, the ALJ's finding at step 5 was appropriately based on the RFC and the VE's direct testimony that Plaintiff would still be able to perform jobs in the national economy with that RFC and thus is supported by substantial evidence.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 22] is denied, and the Commissioner's motion for summary judgment [dkt. 38] is granted.  The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date:  7/8/22

_Beth W Jantz_

BETH W. JANTZ
United States Magistrate Judge